UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PROGRESSIVE HAWAII INSURANCE CORPORATION, | ) ) ) | Case No. 3:17-cv-508 |
| *Plaintiff*, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge Debra C. Poplin |
| GERALD D. CURETON, *et al.*, | ) ) ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION**

Before the Court are: (1) Defendant Gerald D. Cureton's motion for an extension of time to answer Plaintiff's complaint (Doc. 38); (2) Plaintiff's motion for default judgment against Defendant Arminda Carter (Doc. 44); (3) Plaintiff's motion for default judgment against Defendant Ryan Carter (Doc. 45); (4) Plaintiff's motion for default judgment against Defendant Temple Baptist Church of Powell, Inc. ("Temple Baptist") (Doc. 46); (5) Temple Baptist's motion to set aside the entry of default (Doc. 49); and (6) Temple Baptist's motion for leave to answer Plaintiff's complaint (Doc. 53). For the reasons stated hereafter, the Court **DECLINES** to exercise jurisdiction over this declaratory judgment action, and the pending motions (Docs. 38, 44, 45, 46, 49, 53) are hereby **DISMISSED AS MOOT**.

I.   **FACTUAL BACKGROUND**

In November 2017, Plaintiff Progressive Hawaii Insurance Corporation filed a complaint for declaratory judgment to determine Plaintiff's obligations, if any, under policies of automobile insurance that Plaintiff issued to Defendant Gerald D. Cureton, as named insured for a 2003

Dodge Ram pickup truck and a 2010 Honda Pilot (the "Progressive Tennessee Auto Policy"). (Doc. 1, at 2.) On August 3, 2018, Plaintiff filed an amended complaint. (Doc. 59.) The instant dispute concerns Cureton's demand that Plaintiff provide him with liability insurance coverage for a motor vehicle collision involving Defendant Arminda Carter that occurred in September 2016, while Cureton was driving a different vehicle—a 1994 GMC commercial dump truck.[1] (*Id.* at 4–5.) The collision involving Cureton and Carter is the subject of a civil tort action currently pending in Anderson County Circuit Court.[2] (*Id.* at 4.) Under the terms of its policy, Plaintiff asserts that it owes no contractual duty of indemnity or defense for the motor-vehicle collision and the litigation in the underlying state-court action and seeks a declaratory judgment to that effect. (*Id.* at 7–8.) Specifically, Plaintiff argues it does not owe any contractual duty to Cureton because: (1) the 1994 GMC commercial dump truck and Hurst trailer were being used for commercial purposes at the time of the collision and do not meet the definition of "auto" or "trailer" under the terms and conditions of the Progressive Tennessee Auto Policy; (2) the 1994 GMC commercial dump truck, Hurst trailer, and CASE skid steer operated by Cureton at the time of the motor-vehicle collision were available for his regular use and, therefore, excluded from liability insurance coverage under the Progressive Tennessee Auto Policy; and (3) Gerald

---

[1] According to Plaintiff's amended complaint, in August 1999, Cureton purchased the 1994 GMC commercial dump truck, along with a Hurst trailer, and a CASE skid steer "for the use, control, benefit and ownership" of Temple Baptist, where he served as a church member and volunteer. (Doc. 59, at 2.) Based on Cureton's relationship with Temple Baptist, this vehicle and equipment were also available for his regular use. (*Id.*) During the relevant time period, the vehicle and equipment were covered by a Business Auto Policy issued by Brotherhood Mutual Insurance Company, which specifically identified the 1994 GMC as a listed insured vehicle and Gerald D. Cureton as an insured driver. (*Id.* at 3.)

[2] In the underlying state-court action, Arminda Carter and Ryan Carter "allege in their [a]mended [c]omplaint that Gerald Cureton was negligent and negligent *per se* in causing the collision and the plaintiffs' bodily injuries, loss of consortium and damages and that John Cureton, Daryl Fersner d/b/a Fersner Plumbing Co. and [Temple Baptist] are vicariously liable . . . ." (*Id.* at 4.)

2

D. Cureton failed to comply with his contractual duty to notify Progressive after the motor vehicle collision on September 2, 2016. (*See* Doc. 59, at 6–7.)

## II. FEDERAL JURISDICTION[3]

It is well established that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *see also Green v. Mansour*, 474 U.S. 64, 72 (1985) (describing that the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant"). In short, the Court is "under no compulsion" to exercise jurisdiction under the Declaratory Judgment Act. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

Courts within the Sixth Circuit consider five factors in deciding whether to exercise discretion to grant declaratory relief:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

---

[3] On July 31, 2018, the Court ordered Plaintiff to file an amended complaint and provide the Court with allegations from which it is able to substantiate that Plaintiff is of diverse citizenship from each defendant. (Doc. 58.) Plaintiff filed its amended complaint on August 3, 2018 (Doc. 59), and the Court is now satisfied that it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). However, the Sixth Circuit has never assigned weight to the individual factors, advising instead "that the 'relative weight' of the factors depends heavily on the 'underlying considerations of efficiency, fairness, and federalism,' which vary depending on the circumstances of each case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

### A. Settlement of the Controversy & Clarification of the Legal Relations at Issue

The first and second *Grank Trunk* factors "are closely linked and are often considered in connection with one another." *Cincinnati Ins. Co. v. Herman Grant Co.*, No. 1:16-CV-369, 2017 WL 2963460, at *2 (E.D. Tenn. July 11, 2017). The first factor is whether the declaratory action would settle the controversy. As discussed in *Scottsdale Insurance Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), "two lines of precedent seem to have developed in [Sixth Circuit] jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Id.* at 555. One line of precedent has concluded "that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* Conversely, the second line of precedent has concluded that, "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* The *Flowers* court ultimately adhered to the first line of precedent, finding that the district court's declaratory judgment did settle the controversy before the parties—whether the insurance policy at issue covered defendant as an insured. *Id.* at 556. However, the court also noted that "the contrary results in these cases might also be explained by their different factual scenarios," such as

whether issuing declaratory relief turned on factual issues being litigated in state court and whether the plaintiff is also a party to the state action. *Id.* at 555.

At first glance, it appears this Court's judgment would settle the controversy because the only issue is whether Plaintiff's insurance policy covers the vehicle driven by Cureton when the accident occurred. *See Flowers*, 513 F.3d at 556. Moreover, this issue could not be considered in the state-court action because, as Plaintiff points out, it is not a party to that action. *See id.* However, as Brotherhood Mutual and Cureton point out in their respective briefs, Cureton's access to the equipment is, at least in part, relevant to whether Plaintiff has a contractual duty to defend or indemnify Cureton. (*See* Doc. 59, at 6–7 (arguing that "the 1994 GMC commercial dump truck, Hurst trailer and CASE skid steer operated by Gerald D. Cureton at the time of the motor vehicle collision on September 2, 2016 were available for his regular use and, therefore, those vehicles were excluded from liability insurance coverage otherwise provided under Part 1 - Liability to Others in the Progressive Tennessee Auto Policy").) In the tort action pending in Anderson County Circuit Court, Temple Baptist's answer asserted that Cureton owned the equipment, and denied that it owned the equipment, maintained it, gave permission to Cureton to use it, or gave Cureton access to it. (*See* Doc. 67-2.) In his answer in the underlying tort action, Cureton admitted that Temple owned the equipment, kept and maintained it, gave him permission to use it, and gave him access to it. (*See* Doc. 67-3.) Thus, the state court must decide these ownership and access issues to determine the direct and vicarious liability of various defendants in the underlying state-court action.

In *Bituminous Casualty Corp. v. J & L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004), the Sixth Circuit held that where three courts had to address an identical issue,

> [t]he declaratory judgment action in federal court could serve no useful purpose. The federal court could either reach the same conclusion as the state court, in

5

> which case the declaration would have been unnecessary and the federal litigation a waste of judicial resources, or the federal court could disagree with the state court, resulting in inconsistent judgments.

*Id.* at 813–14. Here, three courts would also be required to consider the ownership status of, and Cureton's access to, the equipment. In addition to the state-court tort action and the declaratory judgment action before this Court, there is also a declaratory judgment pending in state court regarding the amount of insurance coverage available under the insurance policy—covering only "owned autos"—issued by Brotherhood Mutual to Temple Baptist. (*See* Doc. 67-1.) Accordingly, the first factor weighs against exercising jurisdiction.

The second factor in the *Grand Trunk* analysis is closely related to the first factor,[4] and "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* at 557. While the parties to this case may have other tortious or contractual relationships to clarify in state court, the Court's primary concern in considering the second factor "is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.* In the instant case, if the Court issues a declaratory judgment, it will clarify the legal relations at issue—namely, the contractual duties of indemnification, if any, owed by Plaintiff with respect to the motor vehicle collision. However, as detailed above, it is not apparent that this Court's determination of the legal relationships between Plaintiff and Defendants "will not confuse the state court's analysis" of any liability issues. *Id.* at 558. Specifically, if this Court were to find that a certain Defendant owned or had access to the equipment to determine the scope of

---

[4] Like the first factor in this analysis, there is a split in Sixth Circuit precedent "concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Flowers*, 513 F.3d at 557.

insurance coverage, it could also affect the determination of certain parties' liability in the underlying action. Thus, the second factor, too, appears to weigh against exercising jurisdiction.

### B. Procedural Fencing and Res Judicata

With respect to the third factor, the Court is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* at 558. District courts should not deny jurisdiction to plaintiffs who have not "done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress." *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986). Although Cureton notes that "the filing of this action in federal court gives rise to the appearance that Plaintiff seeks to make an 'end run' around the state court system" (Doc. 65, at 7), no Defendant has pointed to any actual evidence of improper motive on behalf of Plaintiff. (*See* Docs. 65–67.) Accordingly, this factor weighs, at least slightly, in favor of exercising jurisdiction.

### C. Federalism Concerns

The fourth factor considers whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction. The United States Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283. However, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state court jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). The Sixth Circuit considers three sub-factors in determining whether the exercise of jurisdiction would increase friction between federal and state courts:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)). The first sub-factor considers whether a district court's resolution of this action is predicated on a state court's resolution of factual issues. "In the context of actions seeking a declaration of the scope of insurance coverage, [Sixth Circuit cases] have recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Flowers*, 513 F.3d at 560. Brotherhood Mutual argues that, to issue declaratory relief, this Court will need "to make factual findings regarding the ownership, use, and access to the equipment, all of which are fact questions that are also at issue and will be determined in the underlying tort action." (Doc. 67, at 6.) Similarly, Gerald Cureton argues that "ownership of the truck, trailer, and [CASE] skid steer is at issue in the underlying state tort action, state declaratory judgment action, and the present declaratory judgment action." (Doc. 65, at 5.) As explained above, the Court agrees with Brotherhood Mutual and Cureton. Thus, this sub-factor weighs against the exercise of jurisdiction.

The second sub-factor focuses on whether the federal or state court is in a better position to resolve the issues in the declaratory action. Generally, state courts are in a better position to evaluate questions of state law. *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) ("[T]he district court held that the state court would not be in a significantly better position to evaluate the terms or exclusions in the insurance contracts because

both forums would apply Kentucky state law. However because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."); *Bituminous*, 373 F.3d at 815–16 ("Where as here, there are two potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction."); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991) ("The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." (citation omitted)). However, "[t]his consideration appears to have less force when the state law is clear and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560. The issue presented by this declaratory judgment action does not appear to be novel or involve unsettled state law. Thus, this factor does not clearly weigh against exercising jurisdiction.

The final sub-factor focuses on whether the issue in the federal action implicates important state policies and is more appropriately considered in state court. "[I]ssues of insurance contract interpretation are questions of state law with which the . . . state courts are more familiar and, therefore, better able to resolve." *Travelers*, 495 F.3d at 273 (internal quotations and citation omitted). However, there are cases where, although the resolution of a declaratory judgment action seeking a determination of the scope of an insurance policy is governed by state contract law, "no state law or policy would be frustrated by the district court's exercise of jurisdiction . . . ." *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). Interpretation of Tennessee insurance contracts is guided by state public policy. *See, e.g.*, *Purkey v. Am. Home Assur. Co.*, 173 S.W.3d 703, 705 (Tenn. 2005). Therefore, Tennessee courts are in a better position to resolve the insurance policy interpretation in this

9

case. *See Flowers*, 513 F.3d at 561. Accordingly, this sub-factor weighs against exercising jurisdiction.

### D. Alternative Remedy

The final factor to consider is the availability of alternative remedies. A district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. One alternative remedy available under Tennessee law is to seek a declaratory judgment in state court. *See* Tenn. Code Ann. § 29-14-102. Additionally, Plaintiff could file an indemnity action at the conclusion of the state-court action. Sixth Circuit precedent is split "regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Flowers*, 513 F.3d at 562. "[R]ather than applying a general rule, [the Court's] inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.*

In this case, Plaintiff could have filed a declaratory action in the Tennessee courts. In many ways, this alternative would have been better. As Brotherhood Mutual points out, because Plaintiff has chosen to file this separate federal action, it "will not participate in discovery in the state tort action and presumably will demand to depose these and other witnesses separately . . . resulting in needless and cumulative discovery." (Doc. 67, at 6.) The Tennessee courts might also have been able to combine the two actions so that all issues could be resolved by the same judge. *See Flowers*, 513 F.3d at 562. The remedy of an indemnity action would also be a viable option here because Plaintiff has presented no evidence that it is unable to join the underlying action. *See id.* Thus, the final factor weighs against exercising jurisdiction over this declaratory judgment action.

### E. Balancing the Factors

In *Hoey*, the Sixth Circuit explained its reluctance to assign weights to the *Grand Trunk* factors when considered in the abstract:

> [T]he factors are not, of course, always equal. For example, a relatively efficient declaratory judgment (factors 1, 2, and 5) could very well be inappropriate if hearing the case would be unfair (factor 3) or would offend the bundle of principles we generally label "federalism" (factor 4). The relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case. The essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair.

773 F.3d at 759 (internal citations omitted). In this case, an evaluation of the *Grand Trunk* factors leads to concerns about whether exercising jurisdiction over this declaratory judgment action would be inefficient and raise federalism concerns. Accordingly, the Court will decline to exercise jurisdiction.

### III. CONCLUSION

For the reasons set forth above, the Court **DECLINES** to exercise jurisdiction over this declaratory judgment action. Accordingly, this action will be **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**